[No. 19497.   Department Two.   December 14, 1925.]

GEORGE TSIAKILOS, *Appellant,* v. CHRIS MANTHOU *et al.,*
*Respondents.*[1]

[1] COMPROMISE AND SETTLEMENT (9)—EVIDENCE—SUFFICIENCY. Evi-
   dence of a compromise and settlement between partners is sus-
   tained by the testimony of one of the parties that the other ac-
   cepted as payment in full the amount shown as a balance by the
   books.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered March 14, 1925, upon
findings in favor of the defendant, in an action on con-
tract, tried to the court.   Affirmed.

*Bartlett Rummel,* for appellant.

*J. Charles Dennis,* for respondents.

MAIN, J.—After the dissolution of the partnership
between the plaintiff and the defendant Chris Manthou
(who will be referred to as though he were the only
defendant), the present action was brought for the pur-
pose of recovering a balance of the profits claimed to
have been earned during the last month of the existence
of the partnership.   The defendant in his answer
pleaded a settlement and payment of the amount
agreed upon.   The plaintiff in reply claimed that in the
settlement he was overreached and fraud was practiced
upon him.   Upon the issues thus framed, the cause was
tried to the court without a jury, and resulted in a
judgment dismissing the action, from which the plain-
tiff appeals.

In the year 1921, the appellant and the respondent
engaged in the bakery business in the city of Tacoma,
under the firm name of the U. S. Baking Company.

[1]Reported in 241 Pac. 353.

The appellant owned one-third interest and the respondent the other two-thirds. The firm continued in existence for approximately three years and did an extensive business. By written contract, dated July 18, 1924, but which according to the evidence was signed about four days later, the firm was dissolved. By this contract, the respondent was to pay the appellant for his interest in the business $2,250 as therein provided, and $275.32 for the undivided profits up to the first day of July. It was further agreed that the partnership should be dissolved on the first day of August, 1924; and that, on that day, the respondent would pay to the appellant one-third "of the net profits of said business for the month of July, 1924."

The appellant remained in the business until the first of August. During all the time that he was a member of the firm, he worked in the bakery and the respondent managed the business, which was a successful one. On or about the 5th day of August, 1924, the parties met for the purpose of settling the profits for the month of July, in accordance with the contract. It will be noticed that the contract does not provide the manner in which the profits for that month are to be determined. During the life of the partnership it had been the practice of the partners at the end of each month to pay all the bills out of the cash that had been received during that month and then divide the balance as profits. This is substantially the method which was used in determining the profits for the month of July which are in dispute.

The respondent testified that:

"On the fifth of August I met him down town and he went up to the house with me, in my car, and we checked up everything. Q. Now, can George read English and write it? A. Sure he can. Q. Did you have all of those bills there? A. Yes, I had everything on the desk. He

said, as long as you pay everything it don't matter. I said, sure I will pay; if I don't pay I will be the guy. He said, how much will it be for me. I showed him the book and at the bottom there was the expenses, and sales and flour on hand, which I put in as money; so that there was the difference there and we divided that, and he had $100.97 coming, and I gave him a check on the fifth for $100.55, and then we went down town and he did not say anything. Q. And was he around from that time on? A. After that, oh, yes, he was around there for nearly two months. Q. What was he doing? A. Buying bread and coming to the house to see the kids and so forth; he was always around there every day or so. Q. Was there any talk in any way by him that this $100.97 was not in full settlement? A. No, not a word.''

[1] If this evidence is true, and the trial court apparently believed it to be so, there was a settlement with full knowledge and understanding on the part of the appellant and, if that is correct, it cannot be held that he was in any manner defrauded or overreached. The trial court, in the judgment dismissing the action found expressly,

''That on the 5th day of August, A. D. 1924, the plaintiff and the defendant agreed upon the sum of $100.97 as one-third of the net profits for the month of July, 1924, and agreed by and between one another that the said sum of $100.97 was the total amount due to the plaintiff herein, and that said sum was paid by the defendants to the plaintiff and accepted by the plaintiff in full settlement of the account between the plaintiff and the defendant, and that there was no fraud in said transaction.''

It is true that the appellant disputed the testimony of the respondent, but, as stated, the trial court, as indicated by its finding accepted the testimony of the respondent as the correct version of the settlement. After a careful consideration of the record, we are led to the same conclusion. If the parties met and

settled up the profits which accrued during the month of July and the appellant was not in any manner over-reached or defrauded, there can be but one disposition of the case, and that is the affirmance of the judgment of the trial court. With this view of the facts, the other questions argued in the briefs become immaterial, and a discussion of them would serve no useful purpose.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.